# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **14-00239-01-CR-W-BCW** |
| **Robert R. Ray,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (Doc. #25) filed on June 20, 2015, by defendant Robert R. Ray ("Ray"). On August 12, 2015, the undersigned held an evidentiary hearing on Ray's motion. Ray was present and was represented by his counsel, Justin Johnston. The government was represented by Assistant United States Attorney Alison Dunning. At the evidentiary hearing, two witnesses testified: Officer Johnathon Dawdy and Officer Michael Jones, with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Video |
| Gov't. #2 | Pistol |
| Gov't. #3 | Magazine |
| Gov't. #4 | Live rounds |
| Gov't. #5 | Box |
| Gov't. ##6-7 | Invoices |
| Gov't. ##8-14 | Photographs |
| Gov't. #15 | Report |
| Gov't. #16 | Procedure |
| Gov't. #18 | Warning and waiver |
| Gov't. #19 | Audio/video |
| Gov't. #20 | Box |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On July 21, 2014, Officers Johnathon Dawdy and Michael Jones were on patrol for the Kansas City (Mo.) Police Department. Tr. at 4-6, 102-03.

2. On that date, the officers observed a Chevrolet Tahoe – license plate 5HP-555 – at a convenience store (Express Mart) at 7007 Longview Road. Tr. at 6, 8.

3. The Express Mart was located in a general area known to the officers for repeated criminal activity, including narcotics and guns. Tr. at 7.

4. As the officers were driving by the Express Mart, the Tahoe was pulling out of the parking lot. Tr. at 8, 59.

5. However, once the Tahoe pulled out, it seemed to Officer Dawdy to be suspiciously stalling as if waiting for the officers to leave the area. Tr. at 8-9, 59, 62.

6. After encountering the Tahoe again a few minutes later, the officers followed the vehicle and observed that the Tahoe was exceeding the posted speed limit of 25 mph (the Tahoe was travelling at least 30 mph). Tr. at 10-11, 104.

7. Officer Dawdy also noted that the Tahoe had a cracked windshield. Tr. at 11.

8. At that point, the officers initiated a traffic stop of the Tahoe. Tr. at 11.

9. The officers radioed in the license plate and were informed that there was a warrant for a "Brandon Davis" associated with the license plate. Tr. at 11-12, 104-05.

10. Officer Dawdy approached the driver's side of the vehicle while Officer Jones approached the passenger side. Tr. at 13-14.

11. The driver of the Tahoe was Ray. Tr. at 14.

12. After Officer Dawdy approached the vehicle, Ray rolled down his window – initially only a short amount – but then all the way after instructed by Officer Dawdy. Tr. at 14.

13. Officer Dawdy smelled an odor of marijuana coming from the vehicle. Tr. at 17, 68-69.

14. Officer Dawdy asked for identification and insurance for the vehicle. Tr. at 14.

15. After obtaining the driver's license, Officer Dawdy recognized Ray as someone he had stopped previously and arrested for possession of narcotics. Tr. at 15-16, 56-58.

16. Officer Dawdy recalled that Ray had a history of resisting arrest and fleeing in vehicles. Tr. at 15-17, 59, 91-93.

17. Officer Dawdy returned to the patrol car and ran Ray's identification though dispatch. Tr. at 18-19, 46.

18. The dispatcher informed Officer Dawdy that there was an outstanding warrant for possession of narcotics for Ray. Tr. at 19, 47, 52.

19. Officer Dawdy then asked Ray to step out of the vehicle to sign a speeding ticket. Tr. at 20-21.

20. Due to Ray's history, Officer Dawdy was concerned that Ray may suddenly drive off from the scene. Tr. at 20-22.

21. Ray initially refused to exit the vehicle and locked his door. Tr. at 21-22, 72, 95.

22. Officer Jones – through the passenger window – then told Ray if he did not get out of the car, he would be maced. Tr. at 22.

23. While Ray was talking with Officer Jones, Officer Dawdy reached in an unlocked the driver's side door, opened the door, and grabbed Ray's left arm. Tr. at 22, 76.

24. Officer Dawdy observed Ray turn his body away from the officer and Ray seemed to be reaching down to his right side toward the center console before the officers were able to remove him from the vehicle. Tr. at 22-23, 76.

25. After getting Ray out of the vehicle, the officers handcuffed him. Tr. at 22, 48.

26. Ray was placed under arrest and searched (a large amount of currency was found on his person). Tr. at 24.

27. Officer Dawdy then determined that the vehicle would be towed and began conducting a search of the vehicle – both as an inventory search and a probable cause based on the smell of marijuana. Tr. at 25-26, 49-50, 97, 120.

28. The ensuing search of the vehicle found a loaded handgun and a large amount of currency in the center console and a small amount of marijuana underneath the driver's seat. Tr. at 26-27.

29. While the search of the vehicle was being made by Officer Dawdy, Ray was asking Officer Jones to check again on the outstanding warrant. Tr. at 40, 109-111.

30. A computer check by Officer Jones disclosed that the outstanding warrant was actually for another individual with a similar name. Tr. at 40, 52-53, 111.

**PROPOSED CONCLUSIONS OF LAW**

In his motion to suppress, Ray seeks to have all of the evidence seized[1] during the July 21, 2014 traffic stop suppressed, arguing that the warrantless search of the Tahoe violated the Fourth Amendment. In addressing the constitutional argument raised by Ray, the Court is mindful that the Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891).

---

[1] Ray also seeks suppression of his later incriminating statements as fruit of the poisonous tree.

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. [P]eople are not shorn of all Fourth Amendment protection when they step . . . from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S. Ct. 1391, 1400-01 (1979).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, Officers Dawdy and Jones did not have a warrant to search Ray's vehicle. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).

Without question, a traffic stop constitutes a seizure under the Fourth Amendment. *United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir. 2008). To that end, most warrantless traffic stops are justified under the Fourth Amendment based on probable cause and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996). In such cases, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994) (*en banc*). In this case, the officers had reasonable cause to stop the Tahoe based at least[3] on the officers' belief that the Tahoe was travelling in excess of the posted speed limit. *See*, *e.g.*, *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007)

---

[3] The Court need not reach the issue as to whether the cracked windshield or the warrant associated with the license plate justified the traffic stop – although there seems little doubt that either fact would support at least an investigatory stop.

5

Case 4:14-cr-00239-BCW   Document 30   Filed 09/08/15   Page 5 of 8

Even though an officer may have justification to initiate a traffic stop, the ensuing detention of a vehicle's occupants "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to the circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). If an officer's suspicions become heightened during the course of such routine traffic stop, the officer may be justified in expanding the scope of the investigation. *United States v. Coleman,* 700 F.3d 329, 335 (8th Cir. 2012) ("[I]f the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion."). More specifically:

> If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994). In this case, in the course of performing a routine traffic stop of the Tahoe, Officer Dawdy smelled the aroma of marijuana emanating from the Tahoe. Again, at a minimum,[4] this permitted Officer Dawdy to expand the scope of the encounter.

Moreover, even absent the additional reason, an officer may order a driver to exit the vehicle in the interests of officer safety during a routine traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 413-15, 117 S. Ct. 882, 885-86 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12, 98 S. Ct. 330, 333 (1977). Additionally, the Supreme Court has observed that, during a routine traffic stop, police officers "may order out of a vehicle both the driver and any passengers [and] perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S. Ct. 484, 488 (1998). This is

---

[4] Because the Court finds credible the testimony of Officer Dawdy that he smelled marijuana, the Court need not reach the government's alternative basis justifying the search of the Tahoe – an inventory search. In addition, the Court need not consider the legal implications of Officer Dawdy mistakenly being told that there was an outstanding warrant for Ray.

particularly true where an officer – like Officer Dawdy in this case – had information that Ray had resisted arrest on previous occasions and had driven away from the scene during prior traffic stops. Under those circumstances, the Court concludes that it was reasonable to order Ray to exit the vehicle, to pat him down for weapons, and to place him in handcuffs while the vehicle was searched.

However, concluding that the initial stop of the Tahoe was justified under the Fourth Amendment and that the officers were reasonable in their treatment of Ray are only preliminary inquiries. Not every proper traffic stop justifies the warrantless search of the stopped vehicle. In this case, however, the Court concludes that the search of the Tahoe was justified under the so-called "automobile exception." The "automobile exception" authorizes law enforcement officers "to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)). The Supreme Court has justified this departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility. *California v. Carney*, 471 U.S. 386, 390-91, 105 S. Ct. 2066, 2069 (1985). Nonetheless, the Court has repeatedly limited the scope of this potentially broad exception to the warrant requirement by requiring a showing of probable cause. And in that regard, probable cause to search an automobile only "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009).

In applying the automobile exception to differing facts over the years, the Eighth Circuit has repeatedly noted that when law enforcement officers have smelled the odor of illegal drugs emanating from a vehicle, then "there was a reasonable probability [drugs were] located inside

7

the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs." *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011). *See also United States v. Neumann,* 183 F.3d 753, 756 (8th Cir. 1999) (stating "detection of the smell of burnt marijuana . . . gave [the officer] probable cause to search the entire vehicle for drugs"). Based on this precedent, the Court concludes that the credible testimony of Officer Dawdy as to what he smelled provided probable cause to search the entire vehicle for illegal drugs – including the passenger compartment and center console. As such, the contraband found and seized during that search was not unconstitutionally obtained and suppression is not warranted. In accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Ray's MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (Doc. #25).

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

       */s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**